

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2007

# Wowor v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1535

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Wowor v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1354.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1354

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Case No: 06-1535
_____

ERENS ROBERT WOWOR,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES; SECRETARY OF DEPARTMENT
OF HOMELAND SECURITY,

Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A96-249-177)
_____

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2007

Before: FISHER, JORDAN and ROTH, *Circuit Judges*,

(Filed: April 4, 2007)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Erens Robert Wowor, a citizen and native of Indonesia, petitions for review from a final order of removal by the Board of Immigration Appeals ("BIA") denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1252(a)(1). For the following reasons, we will deny the petition.

I.

Wowor was admitted to the United States as a non-immigrant alien in transit in December of 2002 and was authorized to remain until January 6, 2003. On June 16, 2003, Wowor was served a Notice to Appear, which charged him with removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), because Wowor had remained in the United States beyond the authorized date. Wowor subsequently requested asylum, withholding of removal, and relief under the CAT.

Wowor claims that, if he returns to Indonesia, he will be killed because he is a Christian. He says that, in October 2002, he was assaulted by members of a group called the "Front Muslim Defenders," commonly known in Indonesia as the "FPI." The assault occurred when he interrupted an FPI parade by inadvertently obstructing marchers with his automobile. When Wowor drove his car into their path, members of the FPI directed him to stop his car. Instead of stopping, Wowor slowed down, and members of the FPI began to kick his car. When Wowor rolled down his window to find out why the

1

marchers were attacking his car, one of them struck him in the face. Wowor then got out of his car to confront his assailant. He alleges that the FPI marchers then saw that he had a cross hanging on his rearview mirror and some stickers indicating that he was a Christian. Wowor claims they began insulting him because he was Christian. One of them drew a knife. Wowor tried to grab the knife, but the attacker cut his hand and stabbed him in the stomach. The parade continued, with Wowor left behind bleeding in the street. He alleges that he solicited help from the police, but when the police discovered he was a Christian, they did nothing to assist him. He claims that the police knew he was a Christian because they saw the cross he wore around his neck and the cross hanging on his car mirror. Wowor went to a hospital, received stitches in his stomach, and was released after a "very short" period of time.

Wowor also complained that in 2001 he and other members of the West Indonesian Protestant Church were attacked with rocks during a ceremony to commemorate the laying of the foundation for a new building. Wowor was not hit, but one of his fellow members was. Because of that incident, the pastor decided to resume services in their prior meeting place.

An "International Religious Freedom Report" for Indonesia [the "Report"] issued by the United States Department of State, indicates that the FPI physically attacks nightclubs, bars, and billiard clubs in the name of religion, claiming that those establishments are immoral. However, the Report also suggests that many of those attacks are linked to extortion and kickback schemes rather than religion. According to

the Report, the Philippine government has responded by charging the FPI's leader with inciting violence. The Report further states that the Indonesian government has made some progress in promoting religious freedom by controlling religious violence, but violence does continue. However, that violence is limited primarily to specific parts of Indonesia, such as Central Sulawesi and the Malukus. Wowor testified that neither he nor his family, which consists of his wife, mother, and three children, had ever been prevented from practicing their religion in Indonesia.

The Immigration Judge ("IJ") denied Wowor's application for asylum, his application for withholding of removal, and his application for relief under the CAT. Wowor subsequently appealed the IJ's decision to the BIA. The BIA issued an order on the merits upholding the IJ's decision. It concluded that although the stabbing during the parade and the stoning at the site of the new church were "clearly traumatic," those incidents "were not so severe as to rise to the level of past persecution." The BIA also concluded that Wowor had not established "that his life or freedom would be threatened in the future if he were to return to Indonesia." Because the religious violence generally is limited to specific parts of Indonesia, the BIA determined that Wowor "could avoid future persecution by living in parts of Indonesia where there are not attacks against Christians." According to the BIA, the fact that members of Wowor's family are living in Indonesia and continue to practice their religion without harm is evidence that Wowor would be able to do so as well.

II.

When the BIA has issued a decision on the merits and not simply an affirmance, we review the BIA's decision rather than the IJ's decision. Sukwanputra v. Gonzales, 434 F.3d 627, 631 (3d Cir. 2006). We are required to give significant deference to the BIA's decision. We will uphold the BIA's findings of fact if they are supported by substantial evidence. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We will reverse a BIA decision only if "the evidence is such that a reasonable factfinder would be compelled to conclude otherwise." Chavarria v. Gonzales, 446 F.3d 508, 515 (3d Cir. 2006).

Under 8 U.S.C. § 1158(b)(1), an alien who is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42) may be granted asylum. A "refugee" is someone "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of [the country of such person's nationality], because of persecution or a well-founded fear of persecution on account of ... religion ... ." 8 U.S.C. § 1101(a)(42)(A). According to 8 C.F.R. § 1208.13, an applicant may qualify as a refugee by establishing either that he has suffered past persecution or has a well-founded fear of future persecution.

Wowor argues that the BIA erred in concluding that the incidents Wowor experienced were not severe enough to establish that he had suffered past persecution. Persecution "connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life and freedom.'" Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting Fatin v. INS, 12 F.3d

4

1233, 1240 (3d Cir. 1993)). Persecution "does not include 'all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.'" Id.

On the present record, a reasonable factfinder would not be compelled to conclude the BIA erred in determining that Wowor had not suffered persecution. Persecution connotes extreme behavior. The two alleged incidents, one involving being assaulted after interfering in the FPI's parade and the other involving the stoning of the site of Wowor's new church, are significant matters indeed but not so extreme as to compel us to conclude that Wowor suffered past persecution. Cf. Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (concluding that there was no past persecution because the harm suffered by the applicant was not sufficiently severe where two people knocked down her door, stole some money and jewelry, then stabbed her in the left forearm with a knife); Mohammed v. Gonzales, 400 F.3d 785, 795 (9th Cir. 2005) (finding that there was past persecution where the female applicant suffered genital mutilation); Korablina v. INS, 158 F.3d 1038, 1045 (9th Cir. 1998) (concluding that there was past persecution where the applicant witnessed and was subject to repeated beatings and severe harassment).

Wowor also argues that the BIA erred in concluding that he had failed to establish past persecution based on one of the protected grounds. He contends that there was clear evidence that his attackers were motivated, at least in part, on account of his religion. Wowor's argument, however, mischaracterizes the BIA's conclusion. The BIA determined that Wowor had failed to establish past persecution because the incidents Wowor described were not sufficiently severe. The BIA did not decide, nor did it need to

5

decide, what motivated Wowor's attackers. It had already determined that Wowor had not been persecuted.

Wowor's third set of arguments relates to the BIA's conclusion that he had failed to establish a well-founded fear of future persecution. The BIA held that Wowor did not demonstrate that his life or freedom would be threatened in the future if he were to return to Indonesia. The BIA's conclusion was based on findings from the Report that indicated that religious violence generally takes place in specific parts of Indonesia such as Central Sulawesi and the Malukus. Its conclusion was also based on the fact that Wowor's "mother, wife, and children were living in Indonesia and continued to practice their religion without any evidence of harm."

Wowor contends that the BIA's conclusion that he could relocate to another part of Indonesia to escape religious persecution is clearly erroneous because "the potential for violence against Christians is nationwide." That argument, however, misses the point. To establish a well-founded fear of persecution an applicant must establish a subjective fear of persecution and "show, objectively, that 'a reasonable person in the alien's circumstances would fear persecution if returned to the country in question.'" Lie, 396 F.3d at 536 (quoting Zudeba v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003)). To satisfy the objective prong, an applicant must show that he would be individually singled out for persecution or establish that "a pattern or practice in his or her country of nationality ... of persecution of a group of persons similarly situated to the applicant on account of ... religion ... ." Lie, 396 F.3d at 536 (quoting 8 C.F.R. § 208.13(b)(2)(iii)(A)). To

6

constitute a "pattern or practice," the persecution must be "systemic, pervasive, or organized." Lie, 396 F.3d at 537 (quoting Ngure v. Ashcroft, 367 F.3d 975, 991 (8th Cir. 2004)). Standing alone, a potential for violence is not enough to establish a pattern or practice of persecution. The Report on which the BIA based its conclusions suggests that persecution against Christians is not systemic, pervasive, or organized, and Wowor has not submitted sufficient evidence to compel us to conclude otherwise. In addition, as is the case here, when family members remain in the applicant's native country without meeting harm, and the applicant has not established that he would be singled out for persecution, "the reasonableness of a petitioner's well-founded fear of future persecution is diminished." Lie, 396 F.3d at 537.

Wowor also argues that the BIA "failed to take into consideration the reasonableness of internal relocation under 8 C.F.R. 1208.13(3)" when it concluded that Wowor could avoid future persecution by living in parts of Indonesia where there were no attacks against Christians.[1] His argument fails because Wowor has not shown that he needs to relocate upon returning to his previous home in Indonesia. Wowor lived in the

---

[1] 8 C.F.R. § 1208.13(3) states:
    [A]djudicators should consider, but are not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties. Those factors may, or may not, be relevant, depending on all the circumstances of the case, and are not necessarily determinative of whether it would be reasonable for the applicant to relocate.

7

city of Tangerang, located in the province of Banten. The record before us does not establish that persecution against Christians in that region is systemic, pervasive, or organized. Furthermore, Wowor's family members who live in that area continue to practice Christianity without meeting harm.

Wowor contends that the IJ erred in concluding that the Indonesian government was not complicit in the FPI's attack on him. He claims that the BIA adopted that erroneous conclusion, even though the BIA never addressed the issue. We have power only to review the final order of removal. Normally the final order would be that of the BIA, unless the BIA defers to or adopts the opinion of the IJ. Gao v. Ashcroft, 299 F.3d 266, 271 (3d. Cir. 2002). In this case, there is no indication that the BIA deferred to or adopted any part of the opinion of the IJ. We, therefore, do not review the IJ's conclusions. In any event, because the BIA has determined that Wowor did not suffer persecution, the issue of whether the Indonesian government was complicit in his persecution is without logical foundation.

Finally, we also conclude that, because Wowor failed to satisfy the lower statutory burden of proof required for asylum, he has also necessarily failed to satisfy the clear probability standard required for withholding of removal. Compare INS v. Stevic, 467 U.S. 407, 413 (1984) (holding that an applicant must establish a clear probability of persecution for withholding of removal), with INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987) (holding that an applicant must establish "a well founded fear" of persecution to be eligible for asylum, which does not require the applicant to prove that it is more

8

likely than not that he will be persecuted); see also Ghebrehiwot v. Attorney General of U.S., 467 F.3d 344, 351 (3d Cir. 2006) ("Because [the standard for withholding of removal] is higher than that governing eligibility for asylum, an alien who fails to qualify for asylum is necessarily ineligible for withholding of removal."). We also conclude that Wowor does not qualify for relief under the CAT because he has not established that it is more likely than not that he will be tortured if removed.

III.

Accordingly, for the foregoing reasons, we will deny the petition.